IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| COBB COUNTY SCHOOL DISTRICT, | ) | |
| | ) | |
| | ) | Civil Action No.: |
| Plaintiff, | ) | 1:14-cv-02794-RWS |
| | ) | |
| vs. | ) | |
| | ) | |
| D.B., by and through his | ) | |
| parents, and next friends, | ) | |
| G.S.B. and K.B., | ) | |
| individually | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS EXHIBITS IN SUPPORT OF AWARD OF FEES AND COSTS**

EXHIBIT 6:

DECLARATION OF JONATHAN A. ZIMRING, ESQ.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| COBB COUNTY SCHOOL DISTRICT, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No.: 1:14-cv-02794-RWS |
| vs. | ) ) | |
| D.B., by and through his parents, and next friends, G.S.B. and K.B., G.S.B. and K.B., individually | ) ) ) ) ) | |
| Defendants. | ) ) | |

## DECLARATION OF JONATHAN A. ZIMRING, ESQ.

I, JONATHAN A. ZIMRING, Esq., being duly sworn depose and declare that:

## A. BACKGROUND AND EXPERIENCE

1.     I am an adult resident of the State of Georgia. My business address is the Zimring Law Firm, 1425-A Dutch Valley Place, Atlanta, Georgia, 30324. This declaration is based on my own personal knowledge. It is offered in support of the Defendants D.B. *et al*'s petition for a post-judgment award of attorney fees and costs.

2.    I am an attorney licensed to practice in the State of Georgia and the focus of my current practice and that of my firm is in the field of special education law and related education law issues, including claims and representation of parents, guardians and teachers/educators concerning IDEA, Section 504 and the ADA.  In the past I had a broader education and civil rights practice but it has had a focus on mental health, disability law and education law.

3.    I am a 1971 graduate of the State University of New York at Buffalo, summa cum laude, a N.Y. Regents Scholarship recipient, and a graduate of Duke University School of Law, class of 1974. I am currently a member of the United States District Courts for the Northern and Middle Districts of Georgia, the Eleventh Circuit Court of Appeals and the United States Supreme Court.  I have been a member of the Southern District of Georgia and the Fifth Circuit Court of Appeals. I was admitted to the Bar first in the State of North Carolina and practiced there, including as contract Special Counsel to the Mentally Ill at Dorothea Dix Hospital in Raleigh North Carolina. I came to work in Georgia in 1977 under a program funded by the American Bar Association Commission on Mental Disability to work with attorneys in representing persons of disability statewide and worked with this project and the Georgia Legal Services

Program for several years. I left GLSP in 1983 for private practice, maintaining a practice in education, special education and civil rights. I have represented teachers and administrators, at times through the Georgia Association of Educators, and with professionals who serve children with disabilities and I have represented parents and students with disabilities.

4.      I am a member of the Council of Parent Attorneys and Advocates ("COPAA"), a parents' national trade organization of parents, special education professionals and attorneys. I have the privilege to serve on their Board of Directors, and among other things, have presented to their professional training programs on attorney fees and administrative due process hearings, on IEEs or independent educational evaluations, and other matters, and federal court litigation on special education matters. I have presented or lectured on special education law and disability related civil rights claims in Georgia ICLE programs many times and also presented in other states and in Mercer University and Atlanta Bar programs and in judge and administrative law judge training programs. This has included the Danforth Lectures to United States District Court judges on educational law. I have presented and lectured to special education administrative law judges at yearly training programs

associated with Seattle University School of Law. I have been chairperson of the State Bar of Georgia School and College Law Section, and I have been chairperson of the ABA YLD Committee on Law and the Handicapped. I have represented the State Bar of Georgia on several Georgia legislative committees and study committees on disability law related issues, including committees which revised and redrafted civil commitment codes and guardianship codes. The most prominent of these was the Mental Disability Laws Study Commission which held hearings and rewrote the civil commitment statutes in mental health, drug and alcohol abuse and in cognitive disabilities. I have been a consultant to the Georgia Professional Practices Commission, addressing teacher ethics.

5.    In my thirty-nine (39) years of experience representing children and other persons with disabilities, I have litigated a large number of cases in the federal courts up to and including the United States Supreme Court on special education and related matters, starting with the first enforcement date of the IDEA (then the EHA) in September 1978, and on attorney fees and on attorney fees in special education matters. These include but are not limited to: *Georgia Ass'n. for Retarded Citizens v. McDaniel,* 516 F.2d 1565 (11th Cir.1983), *vacated and remanded,* 104 S.C.t. 2581 (1984), *on remand* 740 F.2d 902, *cert. denied,* 105 S.Ct. 1228

(1985) (extended school year services for children); *Georgia Conference of Branches of NAACP v. State of Georgia*, class order at 99 F.R.D. 16 (S.D. Ga. 1983), unreported trial court order, *aff'd in part and reversed in part*, 775 F.2nd 1403 (11th Cir. 1985) (inappropriate placement of children of color in special education classes); *Mitten v. Muscogee County School District, et. al.*, 877 F.2d 932 (11th Cir. 1989), *cert. denied*, 493 U.S. 1072 (1990) (independent claim for attorney fees and costs under IDEA for prevailing in administrative hearings); *Walker County School District v. Bennett*, 203 F.3d. 1293 (11th Cir.), *cert denied*, 121 S.Ct. 670 (2000) (procedure for the trial of IDEA cases); *Georgia Department of Education v. Derrick C.*, 314 F.3d 545 (11th Cir. 2002) (provision of services to 3 year old disabled students); *G.J. ex rel E.J. v. Muscogee Cnty Sch. Dist.*, 704 F.Supp. 2d 1299 (M.D. Ga. 2010); *Greer v. Rome City Sch. Dist.*, 762 F. Supp. 936 (N.D. Ga. 1990), *aff'd*, 950 F.2d 688(11th Cir. 1991),*vacated*, 956 F.2d 1025, *reinstated*, 967 F.2d 470 (11th Cir. 1992) (least restrictive environment for students with disabilities); *Loren F. ex rel Fisher v. Atlanta Ind. Sch. System*, 349 F.3d 1309 (11th Cir. 2003); *Swain v. Valdosta City Sch. Dist.*, 2013 U.S. Dist. LEXIS 16355 (M.D. Ga. Feb. 7, 2013)(educator retaliation case under the ADA). Besides *Mitten,* I have litigated EHA/IDEA fees in e.g., *Grinsted v. Houston County Sch. Dist.*, 826 F.Supp 482 (M.D. Ga.

1993) and *Turton v. Crisp County Sch. Dist.*, 688 F.Supp. 1535 (M.D. Ga 1988). I have continued to litigate special education cases across Georgia and on a statewide basis, and I have had the privilege to be allowed to participate as attorney for amicus curiae in matters concerning children with disabilities in the United States and Georgia Supreme Courts, and in the Fifth and Eleventh Circuit Court of Appeals. I served as *guardian ad litem* in *Olmstead v. L.C. and E.W. ex rel Zimring,* 527 U.S. 581(1999), which established the definition of disability based discrimination under the ADA. I have filed many dozens of cases over the years in the IDEA administrative court, litigating them through their cycles of filing, mediation, an d if needed motion, preparation and administrative trial.

6.     I have handled many cases with the attorneys for the Cobb County School District (CCSD) before and after this case began. My special education practice predates the current Georgia OSAH process and I handled dozens of special education cases in the administrative court, first when it was managed directly by the Georgia Department of Education and then as it is now managed, before the Georgia Office of State Administrative Hearings. I have been a contract hearing officer for the Georgia Professional Practices Commission, adjudicating teacher cases. I

have written articles, training materials and CLE presentations on special education law including on IEEs and also on attorneys' fees.

7.    I have filed fee petition affidavits for other attorneys when asked and I had a relevant opinion, and I have represented attorneys on their fee petitions where that provided prudent or necessary in their cases. In managing my firm, I have made an effort to be aware of the rates commonly charged by attorneys in these and similar matters such as other civil rights cases, and to understand the practices in the Northern District of Georgia.

## B. IDEA AS A SPECIALITY PRACTICE

8.    Special education cases are particularly challenging for parents' attorneys as many parents do not have adequate financial resources to litigate the cases and usually school districts / Local Educational Agencies ("LEAs") and State Educational Agencies ("SEAs") are aware of this imbalance of power and oppose parents and their disabled children vigorously. School districts litigate these cases using public funds and often taking an unfortunate approach to the litigation which expands the cases and on occasion can be designed to stress the resources of the family. The IDEA fee provisions have been held not to allow reimbursement for the costs of expert witnesses whereas such witnesses are readily available in

many districts and also available on public funds. The cases are also difficult as districts such as CCSD often, like here, control much of the evidence and records, and provide it slowly or keep much of it prior to the use of requests to produce which are answered most often only at trial in a non-discovery procedure. There is a premium on knowledge of the system and process in such representation. To the extent relevant and the *Johnson* factors apply, this would make these cases for parent attorneys "undesirable" and support the rates sought in this matter.

9.    There is an unfortunate shortage of attorneys able to take and accept special education cases, particularly those requiring administrative adjudication like this case, and then perhaps requiring appeal *de novo* in district court. Very few attorneys accept these cases in the metropolitan Atlanta area, and there are only a handful of attorneys who take these cases or are willing to take these cases statewide. There are several special education attorneys who represent parents but who will <u>not</u> extend that representation into a hearing or try a case, and would therefore not be available in this case. I and my firm receive many referrals yearly from other attorneys, firms, clients, professionals, and associations. Many of these clients tell me and tell my staff of their difficulty in finding attorneys. Unfortunately, we turn away parents on a regular basis as we

triage cases.

10.   Special education cases generally represent a specialty practice. This includes a detailed but precise administrative process on assessment, eligibility, meeting, monitoring and program development and IEP focusing on the many educational and civil rights issues and on the medical, psychiatric, psychological and applied health sciences. Many of the key processes and rules arise in an unreported body of administrative rulings, federal OSEP policy letters, and historic and customary practices involving schools and special education programs. This is especially true of the IEE process which may be unique to IDEA. Thus the handling of the cases often requires, and significantly benefits, from experience and expertise.  I have had many attorneys, even those with other civil rights experience decline to handle these cases and refer them to our firm.

## C.   FAMILIARITY WITH BILLING AND FEE RATES

11.   I have managed a small law firm for three decades. During that time, I have kept abreast of the billing rates prevalent in the metropolitan Atlanta community and in other areas where I practice, in particular in special education cases, civil rights cases which have some analogy to these cases and similar referral specialty rates. I have examined fee petitions and been recognized as an expert witness in fee cases and I have filed

affidavits in support of fee petitions after examining the applicable record.

12.   I manage my firm's tracking of time. I am familiar with and manage my firm's billing of fees and costs to clients. We charge hourly rates, and we bill monthly. In the past we tried to use standard statewide rates and then stopped but this lessened our accessibility in some cases and we have reset our statewide and customary billing rate, which is a rate we charge and we receive in all legal communities across the state. As to our bills, we require clients review their bills monthly for reasonableness and accuracy. I personally review all bills to all our clients and often reduce the overall time, allowing for the exercise of billing judgment.

13.   Exhibit 5 is a true copy of a cost disclosure form we use and send to all clients. We bill and are paid for costs as set out on Exhibit 5, in this legal community and in others. We make no profit or mark-up on any expense. I consider the cost amounts found on Exhibit 5 reasonable and community rates in Atlanta for like and similar litigation practices. Exhibit 5 is also a true copy of the cost disclosure actually used in this case and given to Mr. and Mrs. B. as part of their obligation in this case.

**D.     RECORDS RELATED TO THIS REPRESENTATION AND PETITION**

14.   Exhibit 2 is a summary chart taken from our records which sets

out the fees and costs sought. It separates the time by tasks, and each case, i.e., the administrative case and the appeal in this Court, and also by attorney and paralegal. The costs are also summarized here.

15.   Exhibit 3A is a true copy of a summary of all the time expended which is sought on this petition during the administrative hearing procedure. This was compiled from contemporaneously kept billing records. All the time sought here was actually billed to the client.  This time was reviewed by me, and then by Mr. S.B. and endorsed as necessary and appropriate by him or adjusted at the time if there was any question raised as to the time or entry or its meaning, this included the costs we billed.

16.   Exhibit 3B is a true copy of a summary of all the time expended which is sought on this petition during the district court de novo appeal. This was compiled from contemporaneously kept billing records. This time sought here was actually billed to the client.  The time was reviewed by me, and then by Mr. S.B. and endorsed as necessary and appropriate by him or adjusted at the time if there was any question raised as to the time or entry or its meaning, this included the costs we billed.

17.   Exhibit 4 is a true copy of all the costs and expenses billed and sought on this petition. This was taken from contemporaneously kept bills, invoices, and other records.  These were billed to S.B., who was to review

these accountings and to object to any entries which did not appear to be reasonable. The costs sought in this petition were deemed reasonable at the time they were billed to the client. <u>This list is not duplicated in the Bill of Cost but is a supplemental and independent accounting of the costs which may be compensable but which are not available under 20 U.S.C. § 1920.</u> It is my opinion that these costs in each case and for a total in both cases of $ 1,016.27 are reasonable and compensable in this legal community. This does not include expenses such as expert witness fees as such are not permitted under IDEA.

18.   Addressing the expenses sought, we include costs in travel to trial, copying, printing fees for the evidence as required by the process and related costs incurred in the administrative court. This includes costs for the hearing days set in Atlanta by the ALJ and duplication and access to records.  The Georgia administrative rules and OSAH court requires that document notebooks be produced with an original and 3 additional sets or copies, that these be handled, bates stamped or numbered and exchanged with sets for the witnesses and the court, and the other party.

## E.    RELATIONSHIP WITH CLIENTS

19.   We initiated our representation of this young family to assist them in securing an appropriate placement and IEP. We did not have a

long term relationship with them at the time the case was brought against them by Cobb. We did not have any basis for reducing their obligations in any business sense, nor expectation that such an action would lead to additional or other representation. They were sued in a due process request by CCSD which they had not anticipated and this made the representation an emergency situation requiring immediate work and they must answer and begin preparing their case within 2 weeks and as a delay would have hurt them and Drake. The time and activities the case required especially due to how CCSD handled and pushed their case, included large expenditures of time and became a priority over other fee generating representation. The representation required us to not take or secure other fee generating clients over the course of a several months in 2013-2014.

## F.    APPROPRIATE AND REASONABLE EXPENDITURE OF TIME

20.   The total time sought in this case is actually for two matters, the administrative hearing, and then for the appeal in the district court. We also seek time for the activities of this fee petition. This is broken down into categories of work for review in 3A and 3B. We exercised billing judgment, i.e., not all the time spent was billed or billed at the full rate but each bill resulted in reductions of time. In addition, reductions were made in charges where I believed that my work did not require my level of

experience. The time sheets reflect NC or PC or Partial Charge where these occur. These reductions are made with 81 No Charge entries, 57 in the OSAH case and 24 in district court, and 41 PC or partial charges, 32 in the OSAH case and 9 in district court, as shown in the summary line items. The decisions on time was made at the time it was expended based on the status and needs of the case and with the understanding we were billing young parents with one of their children with significant disabilities. We had to attempt to be careful with the time and costs, but we had to be able to win the issue as it was a challenging situation. We also had to respond to the aggressive trial and case strategies of the CCSD, which contributed substantially to the time spent. We had to file GORA requests to understand their positions and practices, as CCSD is not generally at the time forthcoming with information. There were extensive subpoenas filed by them against the parents and professionals and the IEE evaluator which had to be managed and required objections. CCSD was not forthcoming with records about its relationship with IBS, which conducted the evaluations. IBS refused to provide us records to which we were entitled legally and ethically unless CCSD agreed as part of the case defense, and we had difficulty obtaining these due to CCSD's actions. Later

it produced boxes of documents as opening arguments began and we had to review these during the hearing.

21.   During the time after the administrative decision, CCSD did not pay for the evaluation and then failed to address or negotiate any reasonable resolution of the case. We sought to settle the case ibn late December 2013 during the administrative process but CCSD's only offer essential ignored our proposal and was to dismiss and it would conduct a reevaluation FBA without conditions or the rights parents would have in the independent evaluation. This proposal required that the parents waive any claims for fees and costs, including those which had already been expended when it sued. The parents could not start over and waste the months of attempting to provide appropriate services, or waive the costs CCSD had caused, and reasonably rejected that as an unrealistic offer.

22.   Time is sought for additional attorneys and for paralegal services.  A paralegal (Ms. Bender or JB) managed the documents and files, scheduling and aspects of the evidence in this case. She worked on assisting with witnesses and creating and finalizing the document notebooks ALJs require be produced. Special education cases produce an enormous load of material and records, as did this case, and require Georgia Open Records Act and document requests under the educational

record laws (FERPA, 34 C.F.R. Part 99). These have to be reduced and slimmed into exhibits and document notebooks produced. These are typical paralegal tasks, and the production and management of these materials, and of the docket and pleadings, was most effectively and efficiently done by an experienced paralegal. Some of the materials have to be accessed and often data analyzed. This can be a paralegal task or an associate task or even lead attorney task depending on the material.

23.   Ms. Bender worked at our firm for many years, and then stopped for children and now has returned over the past six years. She is a master's level special educator and has handled client document and school files in dozens of cases with years of experience in preparing for hearings and trial. I have billed Ms. Bender at $ 125.00 an hour for several years, as a community and market rate for an experienced advocate and paralegal. This is a rate she charges, and I have charged and receive for her time to many fee paying clients. In my opinion it is a reasonable and market rate for the work she performed here in this legal community.

24.   Ms. Barron had been a parent advocate with our firm for many years, and she has assisted in Ms. Bender's absence in document management and file development, and now in producing and managing the time and cost records for this petition. She retired f for other

professional opportunities but she returned to assist in managing the time sheets and our petitioner for fees. She has experience in this and has done these same tasks on other fee petitions. It was my judgment that her work would be the most efficient for these tasks in a fee petition.

25.   My firm used myself and two other associates on this file. One associate is Ms. Debra Haverstick who worked with me on a division of tasks, often managing subpoenas, pleadings, some of the research, drafting and responding to motions, and trial preparation. She supported the case in the administrative court, but Ms. Haury was the primary in-court associate. When we moved on to the District Court, and especially on motions after the Court held that additional evidence was not needed, Ms. Haverstick became the primary associate. As to the legal work, this was work most efficiently done with the assistance of an associate and at a reduced associate rate than requiring me to complete all the tasks. At the end of trial, Ms. Haverstick, Ms. Haury and I divided tasks, and she and Ms. Haury, without duplication, completed substantial portions of the post-trial pleading the ALJ required, though I also worked on these pleadings in the areas I had special knowledge or was familiar with from trial.

26.   Ms. Janet E. Haury is an advocate/attorney in my firm. She attends IEP meetings with clients and supports their efforts to obtain

adequate evaluations and appropriate services. She initially attended the

IEP meetings for Drake and supported the parents' efforts. She is highly

experienced and skilled in this IDEA process.  We have not sought

reimbursement for this first IEP time as IDEA fee provisions do not allow

such time be reimbursed unless the IEP meetings are related to the case.

She was aware of the facts and law related to the FBA and the IEE request

and maintained a strong working relationship with the clients/parents.

After the case was brought against the parents, she worked as the primary

associate and she supported all evidence development, case development,

trial preparation, witness management, assessment of the records we

received and attended all seven days of trial. She was responsible at trial

for traditional second chair associate tasks and for seeing that we

maintained a record of the course of the testimony, had the documents and

witnesses we needed, were prepared for each day and turn of the trial, and

supported the presentation of evidence. I questioned the witnesses but

reduced the time I spent in preparation by relying on the support and

preparation from Ms. Haury. This was particularly important here as we

were produced loads of documents, some before trial and some on the first

day of trial which had to be assessed. One position taken by CCSD which

we objected to was that its claim that Drake had progressed was not true,

and also, that such a claim was not relevant to the appropriateness of the

FBA. CCSD resisted this and pushed this evidence and in turn, this

required us to spend time assessing the educational and classroom

evidence.

27.    I would briefly meet or coordinate with Ms. Bender, Ms.

Haverstick and/or Ms. Haury to manage the tasks and ensure that we were

prepared, the work was complete and to avoid duplication. This is minimal

time and often was reduced for billing judgment. Tasks were often shared

but not duplicated.

28.    The time found in Exhibits 2 and 3A and 3B is not all the time

spent and is the product of billing judgment. Many entries state NC or Not

Charged and are not sought. Other entries say PC or partially billed and

this time and fee has been reduced from that actually spent.  In the

exercise of billing judgment, we have further reduced the time sought by

3% for the administrative case.

29.    Ms. Haury assisted me at trial on all of the seven (7) trial days.

This included tasks such as managing many of the trial briefs, legal issues,

document notebooks and appearance of witnesses at trial, reforming our

files at the end of the day, tracking the presentation of evidence and

ensuring it was available in proper form, keeping track of the record and

notes of the testimony, and providing me support as I managed the questioning and arguments. It is my opinion this was not duplicative time and to the extent we were both in court at the same time, appropriate and reasonable expenditures of time, and common and customary in our practice generally, and in this legal community. It is time we have billed and have been paid for by fee paying clients.  It was matched by the CCSD which had two attorneys and Dr. Turnage managing the records and evidence at trial on all seven days.

30.   There are some additional factors to consider in the reasonableness of the time. The case was tried for seven (7) days over much of two months. Court dates were initially spread out over several weeks, but then also up in the air. The Plaintiff's estimate of the time kept changing. On one occasion – the first day – after a prehearing conference, Ms. Cooper testified on direct for almost the entire day, took a break and asked not to continue with cross.  This increased the time and costs but was something we could not control or avoid. The ALJ also did not provide us consecutive days for trial, and this start, stop, re-prepare and start again process took time that was also necessary and not avoidable.

31.   During the course of the trial, and before trial, we filed a motion to reduce the evidence *in limine* to cut to the core issues. This was resisted

by the CCSD and deferred by the ALJ. Again, we did what we could to streamline the case but could not control this issue either. An example is that CCSD wanted to support their evaluation by trying to demonstrate that the child had received an appropriate program. We objected on the grounds this was not necessarily relevant to the validity of the evaluation. CCSD insisted it was, and in the face of deferred rulings we had to manage CCSD testimony on the FAPE issues, not just the IEE questions.

32. Transportation or travel time is sought at a 50% rate. This is common and customary with our firm and a rate and billing we bill and receive from fee paying clients including this client. It is my opinion this is customary in this legal community.

33. The time includes actions taken to obtain documents under the Georgia Open Records Act, as the administrative case under OSAH Rule 38 arises without discovery. During pre-hearing, our access to information and material is limited to a voluntary response to our request for our clients "educational records" which CCSD contended was less than what we thought were all the relevant records. This use of the GORA in such cases and against government is common and customary in these cases within this legal community. It was a related and reasonable expenditure

of time that can be billed to fee paying clients. Its cost was billed to us and it is sought in this petition.

34.  The time sought is in my opinion reasonable and necessary in this matter and in this legal community. It is time billed and approved by this client. It is time that is the product of reductions and billing judgment. It is time we would bill fee paying clients. The overall time is reasonable in light of the case and actions of the Plaintiff.

**TIME AND FEE BY INDIVIDUAL AND CASE**

| | INDIVIDUAL | ADMIN TIME | ADMIN FEE | DISTRICT COURT TIME | DISTRICT COURT FEE |
|---|---|---|---|---|---|
| DH | Debbie Haverstick | 84.4 | $ 10,294.50 | 15.2 | $ 1,800.00 |
| JAZ | Jon Zimring | 197.35 | $ 97,850.00 | 154.7 | $ 76,650.00 |
| JB | Janet Haury | 351.6 | $ 66,784.50 | 41.3 | $ 7,990.00 |
| JEH | Jill Bender | 32 | $ 4,000.00 | .65 | $ 81.25 |
| RB | Rachael Barron | 1.3 | $ 162.50 | 10 | $ 1,250.00 |
| | | 664.65 | $ 179,091.50 | 221.85 | $ 87,771.25 |
| | Less 3% voluntary Admin. Case Reduction | | **$173,718.75** | | **$87,771.25** |

## G.          APPROPRIATE HOURLY RATE

35.  My current hourly rate for this work in administrative and

federal court special education cases statewide is Five Hundred ($500.00)

Dollars per hour. Our agreement with our clients, and with this client,

allows us to increase rates periodically, so earlier I billed at a rate of

$475.00 per hour which was an older rate, but now at $500.00 an hour

since the winter of 2014. This is a rate I have billed and received from this

fee paying client, though this young family had limited abilities to pay fees,

and as they could not keep up with the costs of all these bills caused by

their being sued by the District, we entered into a partial contingency fee

payment arrangement. $500 was the identified rate as it is the rate I

currently receive from a number of fee other paying clients for similar work

on similar issues as was spent in this case, and it is in the range of rates I

generally apply to even *pro bono* representation..

36.   I represent other special education clients in the metro-Atlanta

area including in Cobb County and Marietta City Schools. $500 an hour is

my current rate in these matters, though we take cases on a *pro bono* basis

to support parents and as the Canons of Ethics might require.

37.   We charge and seek $125.00 for the work of our advocate Ms.

Jill Bender, performing paralegal and advocate functions, I have charged

her time to other fee paying clients at $ 125.00 an hour and clients have

paid at that rate in this legal community. I believe it is a community rate

for a paralegal of her skills and experience. Using Ms. Bender to perform

tasks which did not require an attorney allowed us to be more efficient and

reduced the overall costs of the representation.

38.   We charge and seek $ 125.00 per hour for the associate work of

Ms. Haverstick. This is a rate we have charged and receive from fee paying

clients for this work in this legal community. She performed traditional

associate tasks outside of court and briefed and researched issues

efficiently, as she is well skilled in this and understands special education

law. Our use of Ms. Haverstick allowed us to be efficient and not to charge

for my work or for Ms. Haury at higher hourly rates.

39.   We charge and seek $ 200.00 per hour for the associate work of

Ms. Haury. This is a rate we have charged and we receive from fee paying

clients for this work in this legal community. She performed traditional

associate tasks outside of court and in court and in preparation for court,

as she is well skilled in this and understands special education law. I was

able to rely on her knowledge and management of the documents and

record and not duplicate her tasks or redo them at a higher rate. We

worked to avoid duplication of costs by discussion and coordinating tasks.

She was essential in court for managing the case and presentation of

evidence. Our use of her work at a lower rate than mine enabled us to save

costs and be more efficient.

40.   I have found it inappropriate to compare government attorney rates to representation of parents in special education matters. First, this is not seen as a relevant consideration by the prevailing case law. *See Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1299-1300 (11th Cir. 1988). School board representation is generally compensated on a monthly and, at worst, a periodic basis, there are no issues with collection, and with less concern for costs as these are available. There is competition and defense and insurance company input which alters the rates one can receive. This all depresses the rates paid and widens the gulf between private and public practice in the special education arena.

41.   Though a parent may recover fees under the IDEA for administrative hearings, these are carried with the case if a school district appeals into federal court and this further delays payment.  Such a delay, as in this case also supports the difference in parent and government rates. My client currently seeks that we be paid for work done in November 2013, over two years after the work was performed, considering the delay in time on this motion.

42.   In summary my firm has charged the following in this petition, which I consider reason and appropriate rates:

| Jonathan Zimring, Esq. | 39 Years experience | $500.00/hour |
| Debra Haverstick, Esq. | 5 Years experience | $125.00/hour |
| Janet E. Haury, Esq. | 6 Years experience | $200.00/hour |
| Paralegal | Experienced | $125.00/hour |

I consider these reasonable rates which are used, paid and arise in the legal community from which the case arises for like and similar work.

43.   Defendants seek an hourly rate of $500 for my work which is within the range of rates charged generally by plaintiff attorneys in complex litigation in the Atlanta legal community for like and similar work performed, and also in cases for experienced attorneys in special education cases in the Northern District of Georgia. My experience is that rates lie within ranges of potential rates and that $500 is within this range. My personal rate for these matters has risen over time as the costs of maintaining a practice have risen, as has my experience and ability to recover such fees from fee paying clients.  I believe that my rate is also an expression of my experience and efficiency, as there are not many issues we have not managed over the course of years in this practice.

44.   In assessing the rates attorneys may charge in my 39 years of practicing law and 37+ years of practicing special education law from its passage through today, I know of no other hourly compensated practice of law in the parent (usually plaintiff) side of the Bar that requires more experience and complexity, especially when one addresses the mandatory non-discovery trials in the administrative court and the necessity of handling multiple witnesses who work for the adverse party but whose testimony may be necessary in your case. Attorneys must also proceed to trial in limited time frames without discovery and handle the evidence and testimony including expert testimony of school witnesses as it arises. Even the process to follow in district court is unclear as it may differ from case to case and can be set by the discretion of the judge. Here the judgment was made to work to bring the case to judgment as an appeal, reducing the time and costs, and as *Norman* states, that judgment supports a high rate.

45.   The resources in special education cases are always unbalanced against a parent attorney compared to government with their own in-house experts.  CCSD called and tried to qualify 8 witnesses as experts in the administrative court and had to go to federal court without recovery of our time, costs and fees. In my opinion, the Court under *Norman* and/or *Johnson* may weigh especially the factors of necessary expertise coupling

with the trial nature of the cases without discovery, the stakes and needs

of the clients (children) at issue, the complexity of the underlying issues,

the time required administratively which engulfs a small firm practice and

requires the litigating attorney to put aside other work, and the small

nature of the Bar, to support the compensatory fee payment sought.

## H.   OTHER CONSIDERATIONS

46.   We have billed for the IEP meeting presenting the IEE for

Drake. This was directly related to the case and necessary at the time.

Representation was necessary as the trial was over but the case had not

yet been resolved by the ALJ. CCSD had its own attorney, representative

and evaluator at its IEP meeting to discuss the FBA, and it had its

evaluator and elected to have its attorney at this IEE IEP meeting. With

the case ongoing, we had to have Mr. and Mrs. B. assisted and represented

at this IEE meeting, especially due to the participation of adverse counsel.

47.   In the exercise of billing judgment, we have reduced the time

sought by 3% for the administrative case.

48.   Heeding the admonition for the Supreme Court in *Hensley v.*

*Eckerhart*, we have tried to avoid making the attorney fee recovery a

second class or stage of this of litigation.  Our attempts at settling this

claim or removing issues through stipulations has been ignored or rejected

without a response by CCSD, which stated through counsel that it could

not address these issues timely and we should proceed with the petition.

49.   This was hard fought and at times technical litigation. Young

parents were sued by their school district, and it was necessary to support

their claims.

50.   Following *Norman*, I have divided this time up into significant

stages of the litigation.  My review of the time based upon the stages of the

litigation reinforces my conclusion that the time sought was reasonable

and necessary.

### ADMINISTRATIVE CASE BY STAGES –  BY TIME AND FEES
### (PRIOR TO ACROSS THE BOARD REDUCTION)

| ADMINISTRATIVE CASE FEES | TIME AS SPENT | FEES AS INCURRED |
|---|---|---|
| SUBTOTAL CASE INITIATION | 7.05 | $    1,530.00 |
| SUBTOTAL REQUIRED CASE PLEADINGS AND ORDERS | 6.6 | $    2,800.00 |
| SUBTOTAL INITIAL CASE ORGANIZATION AND PREPARATION | 41.8 | $    8,867.50 |
| SUBTOTAL FURTHER WORK ON SETTLEMENT TASKS | 8.7 | $    1,830.00 |
| SUBTOTAL CONTINUED/FINAL PREPARATION FOR TRIAL | 64.8 | $   11,915.00 |
| SUBTOTAL HEARING PREPARATION AND HEARING AND EVIDENCE BRIEFS/RESEARCH | **42.7** | **$    8,262.50** |
| SUBTOTAL HEARING/TRIAL/FINAL | 401.3 | $ 116,389.00 |

without a response by CCSD, which stated through counsel that it could not address these issues timely and we should proceed with the petition.

49.   This was hard fought and at times technical litigation. Young parents were sued by their school district, and it was necessary to support their claims.

50.   Following *Norman*, I have divided this time up into significant stages of the litigation.  My review of the time based upon the stages of the litigation reinforces my conclusion that the time sought was reasonable and necessary.

### ADMINISTRATIVE CASE BY STAGES –  BY TIME AND FEES
### (PRIOR TO ACROSS THE BOARD REDUCTION)

| ADMINISTRATIVE CASE FEES | TIME AS SPENT | FEES AS INCURRED |
|---|---|---|
| SUBTOTAL CASE INITIATION | 7.05 | $      1,530.00 |
| SUBTOTAL REQUIRED CASE PLEADINGS AND ORDERS | 6.6 | $      2,800.00 |
| SUBTOTAL INITIAL CASE ORGANIZATION AND PREPARATION | 41.8 | $      8,867.50 |
| SUBTOTAL FURTHER WORK ON SETTLEMENT TASKS | 8.7 | $      1,830.00 |
| SUBTOTAL CONTINUED/FINAL PREPARATION FOR TRIAL | 64.8 | $    11,915.00 |
| SUBTOTAL HEARING PREPARATION AND HEARING AND EVIDENCE BRIEFS/RESEARCH | **42.7** | **$      8,262.50** |
| SUBTOTAL HEARING/TRIAL/FINAL | 401.3 | $ 116,389.00 |

|  | COSTS | FEES |
|---|---|---|
| **ADMINISTRATIVE CASE** | $ 895.32 | $173,718.75 |
| **FEDERAL CASE** | $ 120.95 | $ 87,771.25 |
| **TOTALs** | **$ 1,016.27** | **$ 261,490.00** |
|  |  |  |
|  | **TOTAL FEES AND COSTS** | **$ 262,506.27** |

This Declaration is provided pursuant to the laws of the United States, and I so declare based upon the pains and penalty of perjury. *See* 28 U.S.C. Sec. 1746.

Dated: October 20, 2015

By: Jonathan A. Zimring, Esq.

State Bar of Georgia No. 785250