IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| COBB COUNTY SCHOOL DISTRICT, | : <br> : <br> : |
| Plaintiff, | : <br> : |
| v. | : CIVIL ACTION NO. <br> : 1:14-CV-2794-RWS <br> : |
| D.B., by and through his parents and next friends, G.S.B. and K.B., individually | : <br> : <br> : <br> : |
| Defendants. | : |

## **ORDER**

This case is before the Court for consideration of Defendants' Motion for a Post Judgment Award of Attorney Fees and Costs of Litigation (Dkt. [46]) and Supplemental Motion for an Award of Attorney Fees and Costs (Dkt. [53]). After reviewing the entire record, the Court enters the following Order.

## **Background**

Defended D.B. is eligible for special education services under the Individuals with Disabilities Education Improvement Act ("IDEA"), 20 U.S.C. §§ 1400, *et seq*. At the time relevant to this case, D.B. was a five-year-old student at East Side Elementary School in the Cobb County School District (the

"District"), where he began kindergarten on August 7, 2013. Previously, D.B. attended pre-kindergarten in the Atlanta Independent School District ("APS"), where he received an Individualized Educational Program ("IEP") based on his eligibility under the IDEA categories of autism and speech language impairment.

On August 6, 2013, D.B.'s IEP Team, including his parents, Defendants G.S.B. and K.B., met to discuss D.B.'s IEP. Defendants provided D.B.'s February 21, 2013 IEP from APS and an APS psychological evaluation, but did not provide D.B.'s medical records. The APS records and the parents' statements became the basis for the District's IEP. The IEP team concluded that D.B.'s behavior impedes his learning and could be supported through goals and objectives. At that time, the parents requested a functional behavioral assessment ("FBA") in light of potential transitional issues.

FBAs rely on the premise that all behaviors serve a purpose. With this in mind, FBAs attempt to identify the underlying reasons and environmental variables that contribute to problem behaviors. Information gathered through the FBA helps evaluators design a Behavior Intervention Plan ("BIP") with strategies to reduce or eliminate conditions that encourage problem behaviors

and to create conditions that encourage positive behaviors.

IDEA provides no explicit requirements for FBAs. Rather, industry standards provide the framework for such an evaluation. FBAs may be conducted by educators or behavioral analysts. Because FBAs have no explicit requirements, analysts may exercise substantial discretion in tailoring their data collection to the particular student. But analysts must ensure the accuracy of the data. If the evaluator is confident in the FBA's results, the evaluation may end there. But if the evaluator seeks a more precise evaluation, the next step is a Functional Analysis ("FA"). Most FBAs conducted outside a clinical setting do not include an FA.

The District engaged Integrated Behavioral Solutions ("IBS") to conduct D.B.'s FBA. Erica Cooper was assigned to D.B's case. Cooper compiled her findings in her FBA report dated October 2, 2013. She revised the report on October 30, 2013 to correct a typographical error. The FBA identifies D.B.'s problem behaviors and predicts when behaviors were most and least likely to occur. On October 29, 2013, Cooper drafted a BIP using her conclusions from the FBA. D.B.'s parents disagreed with the FBA and, finding it inappropriate, requested an independent FBA. Defendants engaged the founder of Southern

3

Behavioral Group, Dr. Michael Mueller, to conduct an independent FBA and FA.

The District initiated an action before the Office of State Administrative Hearings ("OSAH") pursuant to the IDEA to defend Cooper's FBA. An administrative hearing was held in the OSAH over seven days from January 15, 2014 to March 26, 2014. On June 3, 2014, the Administrative Law Judge ("ALJ") issued a final decision ("Final Decision") that Plaintiff's FBA data lacked sufficient reliability and was not appropriate. Based on these findings, the ALJ granted Defendants' request for an independent educational evaluation ("IEE") at public expense.

The District appealed the decision to this Court. The case was submitted to the Court based on the administrative record and briefs submitted by the parties. Finding sufficient evidence in the record to support the ALJ's findings, this Court agreed with the ALJ's decision that the FBA did not fulfill IDEA's requirements and affirmed the administrative decision.

## Discussion

Defendants seek to recover attorney fees pursuant to 20 U.S.C. §1415(i)(3). Defendants assert that they are the prevailing party in light of the

ruling of the ALJ and this Court's having affirmed that ruling. Defendants seek attorney fees of $271,527.50 and costs of $1,016.27. Plaintiff opposes the request on four grounds. First, Plaintiff asserts that Defendants are not the prevailing parties as this action did not materially alter the relationship between the parties. Second, Plaintiff asserts that the requested fees are excessive in light of the nature of this action. Third, Plaintiff challenges the hourly rate sought by Mr. Zimring. And finally, Plaintiff challenges the adequacy of the documentation supporting the fee request.

The Court finds that D.B. is the prevailing party and that his parents are entitled to recover attorney fees and costs. In the final decision issued by the ALJ, the ALJ found: "Cooper's FBA is not appropriate because the data collection, as designed, was never going to provide a reliable enough conclusion as to the functions of D.B.'s serious and problematic behaviors." (Final Decision, Dkt. [1-1] at 18,¶ 8). The FBA essentially had "no data" to support its two primary conclusions. (Id. at ¶ 9). Plaintiff's argument that Cooper included adult attention in her FBA and BIP does not alter the fact that data had not been developed to support the FBA. (Pl.'s Resp. Br. [55] at 7-9). The Court finds that obtaining sufficient data to support the IEP and BIP

5

significantly alters the positions of the parties. Rather than proceeding with plans that are not based on sufficient data, the parties were able to proceed with data to assure that appropriate plans were in place for D.B

The Court finds that, while Mr. Zimring's hourly rate may be at the upper end, it is not unreasonable based upon his experience and expertise in this field. Therefore, for lodestar purposes, the Court accepts the hourly rate sought by Mr. Zimring.

Turning to the number of hours expended and the reasonableness of the requested fees, Plaintiff argues that Defendants unreasonably protracted the litigation, spent excessive time, and charged for ancillary matters for which Defendants should not be able to recover. Plaintiff also challenges several charges as either block billing or vague entries which provide insufficient information to allow Plaintiff to meaningfully state its challenges.

As for the block billing and vague entries by Defendants, the Court does not find fault with the submission of Defendants. If the Court were required to parse out time between successful and unsuccessful claims, more specificity would have been required. However, in a single-issue case such as this, the billing records of Defendants are adequate.

However, the Court finds that the hours and thus, the requested fees are excessive. The Court agrees that Defendants filed frivolous motions and needlessly extended the litigation. The proceedings before this Court should have been fairly straightforward. This is an appeal based on an administrative record to be decided on briefs submitted by the parties. Yet, Defendants filed a needless Motion in Limine and/or to Dismiss to Limit the Issues which Plaintiff May Present on its Appeal (Dkt. [24]), which required Plaintiff to file a Response Brief (Dkt. [28]). The Motion was ultimately denied, as moot (Dkt. [44]). Plaintiff cites similar motions filed by Defendants in the administrative stage (Pl.'s Resp. Br. [55] at 11).

Also, the hours spent on compensable work were excessive. Defendants seek fees over $70,000.00 for work done on the appeal in this Court before judgment issued in their favor. When time expended on Defendants' fee petition is added, Defendants seek nearly $100,000 in fees for the federal case. For the administrative phase of the case, Defendants seek over $170,000 in fees. The hourly rate the Court has approved for Mr. Zimring is based on his experience and expertise. The expectation is that that experience and expertise allows him to work more efficiently. The billings do not reflect the efficiency

7

the Court would expect. The Court finds that the hours expended are grossly out of line.

While the Defendants were guilty of needlessly extending the litigation, Plaintiff was guilty of similar conduct. Plaintiff filed a 56-page, 137-paragraph Complaint (Dkt. 1) for a straightforward administrative appeal with essentially one issue. From a monetary perspective, this case is about a $10,500 fee paid by Defendants. The court recognizes that in cases such as this, the value of representation cannot necessarily be evaluated in economic terms. But, the amount of money at issue provides some context for evaluating the reasonableness of the fees charged. Both parties were aware of the amount in controversy in the case, and yet, both parties over-litigated the case. Thus, while the Court believes that an across-the-board reduction in the fees requested by Defendants is appropriate, the reduction is tempered by the fact that some of Defendants' excesses were in response to, or otherwise prompted by, Plaintiff and Plaintiff's excesses.

In circumstances such as these, the Court is not able to tally up hours and activities to reach an arithmetic solution. Rather, the Court relies upon its experience with litigation. "[W]here the time or fees claimed seem expanded,

8

. . . the court may make an award on its own experience." <u>Norman v. Housing Auth. of City of Montgomery</u>, 836 F.2d 1292, 1303 (11th Cir. 1988).The fees sought by Defendant far exceed the fees an attorney could reasonably expect to collect in a case such as this. "[A] lawyer may not be compensated for hours spent on activities for which he would not bill a client of means who was seriously intent on vindicating similar rights, recognizing that in the private sector the economically rational person engages in some cost benefit analysis." <u>Id.</u> at 1301. The Court finds, based on all of the foregoing circumstances, that an award of $75,000 for attorney fees is reasonable.

Defendants seek costs of $1,016.27. Plaintiff has filed a general objection that Defendants failed to provide sufficient information as to their expenses. The Court finds Defendants are entitled to the costs they seek and overrules Plaintiff's objection thereto.

Based on the foregoing, Defendants' Motions (Dkt. [46] & [53]) are hereby **GRANTED**, and the Court awards attorney fees to Defendants and against Plaintiff in the sum of $75,000. The Clerk shall enter **JUDGMENT** in favor of Defendants and against Plaintiff in the sum of $75,000 for attorney fees plus $1,016.27 for costs.

**SO ORDERED**, this 9th day of February, 2016.

_____
**RICHARD W. STORY**
United States District Judge